IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


MICHAEL V. SUMPTER,                          10-CV-85-BR

       Plaintiff,

                              OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


TIM D. WILBORN
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045
(503) 632-1120

       Attorneys for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**DAVID R. JOHNSON**
**RICHARD RODRIGUEZ**
Special Assistants United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

      Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Michael V. Sumpter seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's protective application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.


### ADMINISTRATIVE HISTORY

     This matter is now nearly ten years old and has a record that is nearly 3,000 pages.  Plaintiff filed his initial


2  -  OPINION AND ORDER

application for DIB on June 18, 2001.  Tr. 111-13.[1]  His application was denied initially and on reconsideration. Tr. 43-49.  An Administrative Law Judge (ALJ) held a hearing on February 12, 2003.  Tr. 1033-78.  Plaintiff was represented by an attorney at the hearing.  Tr. 1033.  Plaintiff, lay witness Elizabeth Sumpter, and a Vocational Expert (VE) testified. Tr. 1033-78.

An ALJ issued an opinion on April 25, 2003, and found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 50-59.  On review the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings consistent with its Order.  Tr. 91-93.  Accordingly, an ALJ held another hearing on October 19, 2004, at which Plaintiff was represented by an attorney.  Tr. 1079-1129.  Plaintiff, lay witness Elizabeth Sumpter, a VE, and a Medical Expert (ME) testified at the hearing.  Tr. 1079-1129.

An ALJ issued a second opinion on December 18, 2004, and again found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 18-33.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 7-10.  While the Appeals Council decision was pending, however, Plaintiff filed a new

---

[1] Citations to the official transcript of record filed by the Commissioner on April 12, 2010, are referred to as "Tr."

application for DIB on April 25, 2005, which was denied initially and on reconsideration.  Tr. 1149-50, 1252-56.

On December 9, 2005, Plaintiff sought review of the Commissioner's decision in the District Court for the District of Oregon.  Tr. 1199-1237.  The Court reluctantly remanded the matter on May 31, 2007, for further administrative proceedings.  Tr. 1194-96.  In his Order affirming the Findings and Recommendation made by Magistrate Judge John P. Cooney, District Judge Owen M. Panner held:

> This matter has dragged on for five years, with a record spanning over 1100 pages.  The government now wants the matter remanded for a third hearing.  The Administrative Law Judge ("ALJ") made numerous errors during the prior two proceedings.  The Magistrate Judge's Findings and Recommendation catalog at least 14 errors the ALJ made in the most recent decision alone.
>
> Even that analysis appears overly generous to the ALJ.  The Ninth Circuit looks with disfavor on this "heads we win, tails, let's play again" approach to disability adjudications.  *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  I will adopt the Magistrate Judge's recommendation and reluctantly remand the matter one final time --but it is the final remand.  If this matter returns, the court will resolve the matter, one way or another.

Tr. 1194-95 (footnote omitted).

On July 22, 2007, in accordance with the District Court's Order, the Appeals Council vacated the ALJ's December 18, 2004, decision; ordered an ALJ to hold another hearing; and

consolidated Plaintiff's applications for DIB.  Tr. 1151-57.  An ALJ held another hearing on April 14, 2009, at which Plaintiff was represented by an attorney.  Tr. 2670.  Plaintiff and a VE testified at the hearing.  Tr. 2670-2729.  The ALJ issued an opinion on September 30, 2009, and found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 1133-48.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was forty-nine years old at the time of the most recent hearing.  Tr. 2680.  Plaintiff completed his education through the twelfth grade and attended some additional training for military police when he served in the United States Army.  Tr. 2681.  He has performed past work as a general manager of security, a security chief, a delivery driver, and a sales manager.  Tr. 2718-19.  Plaintiff alleges a disability onset date of May 1, 2000.  Tr. 1252.

Plaintiff served in the Army from 1979 to 1981 as a military policeman (MP).  Tr. 749.  During that time Plaintiff was involved in an automobile accident in which his head hit the windshield and caused soft-tissue damage, particularly in his neck.  Tr. 719, 752, 889.  Plaintiff also had surgery on his right ankle during that time.  Tr. 718-19.  Plaintiff has been

diagnosed with degenerative disk disease of the cervical spine, myofascial pain syndrome, traumatic arthritis and degenerative joint disease of the right ankle, sleep apnea, and chronic sleep disturbance.   Tr. 238, 889, 1026-31, 1407, 1427, 1503, 1777, 2457.

Plaintiff also experienced several traumatic events as an MP; for example, he saw numerous people lose their lives and responded to the scene of several fatal accidents.  Tr. 749-55, 2216, 2521.  Plaintiff has been diagnosed with psychological impairments including anxiety disorder, panic disorder, somatization disorder, post-traumatic stress syndrome with symptoms of nightmares and night sweats, and syncope.  Tr. 845-57, 887, 1407, 1988, 2216.

Plaintiff alleges he is disabled due to depression and anxiety that causes panic attacks while in public; difficulty with memory and concentration due to disturbed sleep and episodes of PTSD that limit his ability to perform even simple tasks; pain in his neck and back that limits his ability to lift, to carry, and to sit for long periods of time; and an inability to manage his anger.  Tr. 166, 1290-1301, 1359-60.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 1135-47.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001).  The court must weigh all of the evidence whether it

supports or detracts from the Commissioner's decision.  *Robbins,*

466 F.3d at 882.  The Commissioner's decision must be upheld even

if the evidence is susceptible to more than one rational

interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.

2005).  The court may not substitute its judgment for that of the

Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.

2006).


## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the

meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially

dispositive.

In Step One, the claimant is not disabled if the

Commissioner determines the claimant is engaged in substantial

gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,

454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.

§ 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the

Commissioner determines the claimant does not have any medically

severe impairment or combination of impairments.  *Stout*, 454 F.3d

8   -   OPINION AND ORDER

at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-

related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff engaged in substantial gainful activity between September 2000 and February 2001 but has not otherwise engaged in substantial gainful activity since his alleged onset date of May 1, 2000.  Tr. 1135.

At Step Two, the ALJ found Plaintiff has the following
severe impairments:  anxiety disorder, mood disorder, chronic
myofascial pain disorder or fibromyalgia, degenerative disk
disease of the cervical spine, right ankle instability, sleep
apnea, and a history of drug abuse.  Tr. 1136.

At Step Three, the ALJ found Plaintiff does not have an
impairment or combination of impairments that meets or medically
equals a listed impairment in 20 C.F.R. Part 404, Subpart P,
Appendix 1.  Tr. 1137.  The ALJ found Plaintiff has the residual
functional capacity to

> lift 20 pounds occasionally 10 pounds
> frequently.  He could stand and walk 1 hour
> at a time and 4 hours out of an 8-hour day.
> He could sit without limitation.  He could
> reach, grip, release, and manipulate large
> and small items.  He could do rapid
> alternating movements of the hands.  He could
> do simple tasks not involving work with the
> public.  He could work with co-employees and
> supervisors.

Tr. 1138.

At Step Four, the ALJ concluded Plaintiff is unable to
perform any of his past relevant work.  Tr. 1147.

At Step Five, the ALJ concluded Plaintiff has a sufficient
RFC to perform jobs that exist in significant numbers in the
national economy.  Tr. 1147.  Specifically, the ALJ found
Plaintiff has the ability to perform jobs that require light work
such as small-products assembler and electronics worker.
Tr. 1148.  Thus, the ALJ concluded Plaintiff is not disabled and,

11 -  OPINION AND ORDER

therefore, is not entitled to Social Security benefits.

## DISCUSSION

Plaintiff contends the ALJ erred by improperly discrediting the medical opinions of Plaintiff's treating psychologist Susan P. Smith, M.D.; treating physician Thomas P. Carr, M.D.; and examining psychologists Gary Sacks, Ph.D., and Karen Bates-Smith, Ph.D.  Plaintiff also contends the ALJ erred by (1) improperly concluding Plaintiff's psychological impairments do not meet or equal Listed Impairments 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders); (2) improperly rejecting statements by lay witnesses Elizabeth Sumpter, Deborah Voll, Wayne Williams, and Wade Sumpter; and (3) failing to include all of Plaintiff's functional limitations in the formulation of Plaintiff's RFC and in the hypothetical posed to the VE.

**I.  ALJ's Reasons for Discrediting the Opinions of Drs. Smith, Carr, Sacks, and Bates-Smith.**

Plaintiff contends the ALJ did not give legally sufficient reasons for discrediting the opinions of Drs. Smith, Carr, Sacks, and Bates-Smith.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028,

12 - OPINION AND ORDER

1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

**A.   Dr. Smith's Opinion.**

Dr. Smith, a psychologist at the Department for Veterans Affairs, was Plaintiff's treating psychologist for nearly six years and saw Plaintiff as often as three times a month.  *See* Tr. 2531-36.  Dr. Smith met with Plaintiff on dozens of occasions from 2001 to 2006.  Tr. 2531-36.  Dr. Smith repeatedly reported Plaintiff struggles with the traumatic events that he witnessed

as an MP in the Army, including seeing his friend shoot himself, responding to an automobile accident in which a whole family was killed and assisting in their removal from the car, responding to a helicopter crash that killed three soldiers and assisting in the gathering of their remains, and responding to a report of a missing soldier and finding the soldier dead from being run over by a tank.  Tr. 1720.

In the course of treating Plaintiff, Dr. Smith diagnosed Plaintiff with PTSD, panic disorder, and major depression. Tr. 835, 845-49.  Dr. Smith noted on several occasions that Plaintiff's disorders cause him to suffer a number of symptoms, which include:  nightly nightmares that disturb Plaintiff's sleep, "nearly hourly" intrusive thoughts of previous traumas, daily flashbacks, irritability and anger with episodes of violent outbursts, persistent anxiety, hypervigilance, difficulty maintaining concentration, difficulty managing work and intimate relationships, severe recurrent panic attacks in public settings, anhedonia, drowsiness and dizziness associated with the use of medications, decreased motivation and self-esteem, and intermittent thoughts of death or suicide.  Tr. 845, 847, 850-52.

In her assessment of Plaintiff's mental RFC, Dr. Smith found Plaintiff is "unable to meet competitive standards" in the following areas:  remembering work-like procedures, understanding, remembering, and carrying out very short and

simple instructions, maintaining regular and punctual attendance, working in coordination with or in proximity to others without being unduly distracted, making simple work-related decisions, asking simple questions, requesting assistance, accepting instructions, responding to criticism from supervisors, getting along with co-workers without disturbing them or exhibiting behavioral extremes, responding appropriately to changes in workplace routine, setting realistic goals or making plans independently of others, interacting appropriately with the general public, and maintaining socially appropriate behavior. Tr. 853-55.  According to Dr. Smith, Plaintiff has "no useful ability to function" with respect to completing a normal workday and workweek without interruptions from psychological symptoms; performing at a consistent pace without an unreasonable number and length of rests; dealing with normal work stress; and understanding, remembering, or carrying out detailed instructions.  Tr. 853-55.  Dr. Smith noted Plaintiff's pain exacerbates his psychological symptoms and vice-versa.  Tr. 846, 856.  On the basis of these symptoms, Dr. Smith concluded Plaintiff would be absent from work more than four days per month and stated her "strong belief that Mr. Sumpter is no longer able to work in competitive, full-time employment."  Tr. 846, 856, 1645.

### 1.   ALJ's Decision.

The ALJ discredited Dr. Smith's opinion on five grounds:  (1) Dr. Smith's treatment notes do not support the conclusion that Plaintiff suffers side effects from his medication; (2) Dr. Smith's conclusions about Plaintiff's physical impairments are outside of her area of expertise; (3) Dr. Smith's treatment notes do not reflect Plaintiff had suicidal ideation; (4) Dr. Smith's assessment is based on Plaintiff's self-reports, which are not credible; and (5) Dr. Smith's conclusions are undermined by Plaintiff's activities of daily living.  Tr. 1141.  Ultimately the ALJ gave Dr. Smith's opinion "little weight."  Tr. 1141.

### 2.   Analysis.

Plaintiff contends the ALJ erroneously rejected Dr. Smith's opinion.  The ALJ did not identify any medical evidence in the record to contradict Dr. Smith's opinion, and the Commissioner does not dispute the ALJ, as a result, was required to provide "clear and convincing reasons" for rejecting Dr. Smith's opinion.  *See Lester*, 81 F.3d at 830-32.

The ALJ concluded Dr. Smith's treatment records do not reflect Plaintiff suffered side effects from his medication.  Dr. Smith's treatment notes, however, indicate otherwise.  Although the ALJ points to a number of Dr. Smith's treatment notes in which Dr. Smith records Plaintiff's reports that he did

16 -  OPINION AND ORDER

not experience any "major side effects of present regimen" (*see, e.g.*, Tr. 797), the record indicates the significant efforts of Drs. Smith and Carr, Plaintiff's treating physicians, to manage Plaintiff's medication regime produced side effects such as somnolence, difficulty concentrating, constipation, difficulty with urination, and a "grand mal seizure" as a result of tapering Plaintiff's use of morphine. Tr. 699, 703, 755, 1727, 1737, 1746, 1760-61, 1777. In addition, Plaintiff underwent a neurological consultation as requested by Dr. Carr on November 25, 2003, in which neurology Nurse Practitioner Gordon Campbell noted Plaintiff's "high dose narcotics" cause a "clouding sensorium and creat[e] intermittent delirium." Tr. 988-91. The Court also notes a significant portion of this record reflects the attempts of Plaintiff's physicians to manage Plaintiff's medication regime. Thus, in light of the record as a whole, the ALJ's reliance on a few of Dr. Smith's many progress reports in which she states Plaintiff did not report any current side effects is not a clear and convincing basis for rejecting Dr. Smith's conclusions.

As noted, the ALJ also found Dr. Smith's conclusions about Plaintiff's physical impairments are outside of her area of expertise. The record, however, reflects Dr. Smith was, in fact,

working closely with Dr. Carr, one of Plaintiff's treating physicians, to manage Plaintiff's care through the VA.  Tr. 993, 1003.  In fact, Dr. Smith concluded Plaintiff's physical impairments in concert with Plaintiff's psychological impairments and symptoms contributes to his inability to perform in a workplace setting.  Tr. 846, 854.  As Plaintiff's treating psychiatrist over a long period, Dr. Smith is "especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment."  *See Lester*, 81 F.3d at 833.

The ALJ did not identify any evidence in the record that indicates Dr. Smith is not capable of assessing Plaintiff's physical impairments or that undermines that portion of Dr. Smith's opinion.  In any event, in light of Dr. Smith's coordination of Plaintiff's treatment with Dr. Carr, the ALJ's unsupported assertion that Dr. Smith is somehow unqualified to consider and to assess the combined effect of Plaintiff's physical impairments and resulting pain with his psychological impairments is not a clear and convincing basis for rejecting Dr. Smith's opinion.

The ALJ also concluded Dr. Smith's treatment records do not support her opinion that Plaintiff suffers from "thoughts of

suicide." Tr. 851. On several occasions, however, Dr. Smith noted Plaintiff reported preoccupations with death and fleeting suicidal ideation. Tr. 902, 905, 921, 1645, 1700. Thus, this is not a clear and convincing basis for rejecting Dr. Smith's opinion.

The ALJ also discredited Dr. Smith's opinion on the ground that her opinion is based on Plaintiff's self-reports, which the ALJ found to be not credible. Tr. 1141. The ALJ found Plaintiff's self-reports not credible based on inconsistent statements Plaintiff made in his testimony; for example, Plaintiff stated he worked for a friend for a few days at a record store even thought the record reflects he worked there for a few weeks. Tr. 1141-42. The Court notes, however, that Plaintiff's physicians have routinely noted Plaintiff suffers from significant memory impairments. Tr. 851, 853, 991, 1777, 2215-16, 2525, 2541. In addition, when questioned by the ALJ at the hearing about his work history, Plaintiff stated he could not "really remember" some of the dates that he worked. Tr. 2687. Moreover, Plaintiff's attorney pointed out to the ALJ at the hearing that one of the dates she relied on had been incorrectly stated by an ALJ in a prior decision that had been remanded on the basis of numerous errors by that ALJ. Tr. 2688. In any event, the fact that Plaintiff suffers from an impairment of memory and misstated some of the dates that he worked eight years

19 - OPINION AND ORDER

before the hearing with the ALJ does not undermine Dr. Smith's opinion after treating Plaintiff for six years.

The ALJ also identified a treatment note in the record by social-work intern Jenna Wilson in which she reported Plaintiff stated he "slash[ed] a doctor's tires" and then conceded he made up the story. Tr. 2265-66. The Court notes, however, that this is an isolated incident in the record. In her more than six years of treating Plaintiff, Dr. Smith did not report that Plaintiff made false statements to her. Moreover, the record reflects psychologists Drs. Sacks, Bates-Smith, and Mark F. Ward found Plaintiff to be credible and concluded he was not a malingerer based on objective psychological tests. Tr. 887, 2216, 2529. In light of the record as a whole and in the context of a claimant who suffers from severe psychological impairments, the Court does not find Plaintiff's inconsistencies and an isolated incident of fabricating a story that he immediately recanted to be a clear and convincing basis for rejecting Dr. Smith's opinion.

Finally, the ALJ discredited Dr. Smith's opinion on the ground that Plaintiff's activities of daily living demonstrated he is more functional than described by Dr. Smith. Tr. 1141. The ALJ noted Plaintiff stated he performed such activities as helping his son build a model car, walking his son to school, doing the laundry and dishes, and playing guitar. Tr. 1138.

The ALJ specifically noted Plaintiff's reported activities such
as playing in a band, traveling to San Francisco, and working
part-time at a record store are inconsistent with Dr. Smith's
assessment that Plaintiff suffers from anhedonia.  Tr. 1141.  The
Court notes, however, that the ALJ has identified isolated events
in a record that spans eight years and nearly 3,000 pages.
Moreover, these activities reported by Plaintiff do not
demonstrate Plaintiff has abilities that transfer to a work
setting.  In addition, Plaintiff does not have to prove that he
is fully incapacitated to be disabled within the meaning of the
Act.  *See Smolen*, 80 F.3d at 1284 n.7.  In fact, the overwhelming
weight of the medical evidence in the record supports Dr. Smith's
conclusion that Plaintiff suffers panic attacks regularly (one to
two per week) when in public and is subject to overwhelming
anxiety regularly when outside of his home.  Tr. 797, 849-56,
887, 2542, 2660.  In addition, the record reflects a worsening of
Plaintiff's anxiety-related symptoms over time; for example, by
2005 Plaintiff was having difficulty going out of his home and
stopped playing music publicly because he often felt sick and got
the urge to flee when in a crowded public setting.  Tr. 1029,
1956, 2073, 2369, 2660.  Dr. Smith concluded Plaintiff could not
consistently perform work-related functions in a public setting
or in proximity to others, and Plaintiff's sporadic ability to
travel or to work a job for a few months does not undermine

Dr. Smith's opinion that Plaintiff's psychological symptoms would consistently disrupt his workday. Tr. 849-56. Moreover, a sporadic ability to work is not inconsistent with disability. *Lester*, 81 F.3d at 833. As Dr. Carr stated, Plaintiff suffers from "cycles of non-functioning" that preclude his ability to work a full or part-time job. Tr. 1029-31.

As noted, the ALJ did not identify any medical evidence in the record that is inconsistent with Dr. Smith's opinion. In fact, Dr. Smith's opinion is consistent with Dr. Carr's assessment that Plaintiff is incapable of performing work on a full-time basis due to a combination of physical and psychological impairments, and it is also consistent with Dr. Sacks's opinion that Plaintiff suffers "severe occupational and social interference due to symptoms of post traumatic stress syndrome, with associated panic disorder." Tr. 887, 1029-31.

The Court, therefore, concludes on this record that the ALJ erred when she discredited Dr. Smith's opinion without providing legally sufficient reasons for doing so.

**B.   Dr. Carr's Opinion.**

Dr. Carr also treated Plaintiff dozens of times from at least 2000 through 2007. Tr. 493, 2105. Dr. Carr diagnosed Plaintiff with chronic myofascial pain syndrome, degenerative disk disease and degenerative joint disease of the cervical spine, and chronic sleep disturbance. Tr. 1029-31. Dr. Carr

notes Plaintiff routinely suffers from severe anxiety and panic
attacks and reports Plaintiff sleeps for 24 hours once every two
weeks and for 48 hours every 4-6 weeks.  Tr. 1021, 1029-31, 1777,
2105-06.  Dr. Carr opined Plaintiff is unable to work at a full-
time job consistently due to his impairments.   Tr. 1031.

### 1.   ALJ's Decision.

The ALJ discredited Dr. Carr's opinion on four grounds:
(1) Dr. Carr's conclusion about Plaintiff's ability to work is
reserved for the Commissioner, (2) Dr. Carr did not include any
functional limitations, (3) Dr. Carr's opinion is not consistent
with Plaintiff's activities of daily living, and (4) Plaintiff
only complained about pain to obtain pain medication.  Tr. 1140.
The ALJ, therefore, gave "little weight"  Dr. Carr's opinion.
Tr. 1140.

### 2.   Analysis.

The record reveals the opinion of examining physician
John H. Ellison, M.D., is the only medical evidence the ALJ
considered to contradict Dr. Carr's assessment.  Tr. 1140, 1405-
1408.  Dr. Ellison examined Plaintiff on February 11, 2006, and
diagnosed Plaintiff with severe chronic anxiety, depression,
phobic disorder, post-traumatic stress disorder, chronic multi-
level cervical degenerative disk disease and degenerative
arthritis, chronic myofascial back and neck pain, unstable right
ankle, constipation, history of single *grand mal* seizure, and

23 -  OPINION AND ORDER

chronic morphine use with dependence.  Tr. 1407-08.  Dr. Ellison

concluded Plaintiff is capable of standing and walking only one

hour at a time for a maximum of four hours a day, is limited to

lifting 20 pounds occasionally due to neck pain, and is limited

in his ability to handle objects.  Tr. 1408.  Dr. Ellison found

Plaintiff's ability to sit, to speak, to hear, to handle objects,

and to travel were not limited.  Tr. 1408.  The Court notes

Dr. Ellison did not reach any conclusions concerning Plaintiff's

ability to perform work-related functions on a regular and

continuing basis or assess any of Plaintiff's limitations

stemming from his psychological impairments.  Tr. 1405-08.

    "[A] treating physician's opinion must be given controlling

weight if it is well-supported and not inconsistent with the

other substantial evidence in the record." *Lingenfelter*, 504

F.3d at 1038 n.10.  "When a nontreating physician's opinion

contradicts that of the treating physician-but is not based on

independent clinical findings, or rests on clinical findings also

considered by the treating physician-the opinion of the treating

physician may be rejected only if the ALJ gives 'specific,

legitimate reasons for doing so that are based on substantial

evidence in the record.'" *Morgan* 169 F.3d at 600 (quoting

*Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  The ALJ

must "give weight not only to the treating physician's clinical

findings and interpretation of test results, but also to [their]

subjective judgments." *Lester*, 81 F.3d at 832-33.  The Court notes Dr. Carr's long-standing relationship with Plaintiff as his treating physician makes him "especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Id*. at 833.

The ALJ is correct that the determination of disability is reserved to the Commissioner, and a physician's conclusion that a patient is disabled is not controlling.  The ALJ, however, must assess Plaintiff's ability to perform work on a regular and continuing basis in light of the opinions of Plaintiff's treating physicians, which are generally afforded "controlling weight." *Lingenfelter*, 504 F.3d at 1038 n.10.  Although the ALJ asserted Dr. Carr did not specifically identify any functional limitations, the Court notes Dr. Carr's report includes references to Plaintiff's growing inability to be in public without his family despite his medication, his routine need for long periods of rest (24-48 hours at a time), and the unpredictability of his pain.  Tr. 1029-31.  These findings, which support Dr. Carr's assessment, represent specific functional limitations that the ALJ did not address.  In particular, Dr. Carr's assessment that Plaintiff suffers from regular panic attacks, is unable to manage being in public

without his family, and requires lengthy periods of rest to recover from chronic sleep disturbance are the same conclusions reached by Dr. Smith and were factors considered by Dr. Smith when she opined Plaintiff would miss more than four days of work per month due to his psychological symptoms.  Tr. 856.

As noted, the ALJ found Plaintiff's activities of daily living undermined his complaints of disability.  The Court, however, does not find Plaintiff's sporadic ability to perform some household chores or to travel are sufficient to undermine Dr. Carr's conclusions set out in his numerous treatment records.

The ALJ also relies on Dr. Carr's treatment notes to support his conclusion that Plaintiff exaggerated his pain complaints for the purpose of receiving additional pain medication.  Tr. 1140.  Dr. Carr, however, does not suggest Plaintiff is exaggerating his pain, but instead stated Plaintiff reported his pain control was "good" with 1.6 grams of morphine a day and he was "afraid meds would be withdrawn if he did not complain about pain."  Tr. 2460.  In fact, Dr. Carr discussed Plaintiff's concern that his medication would be withdrawn if he did not complain of ongoing pain and discussed findings in the New England Journal of Medicine.  Tr. 2460.  Dr. Carr's treatment notes reflect his concern that Plaintiff could grow dependent on morphine.  In fact, a significant portion of the record reflects Dr. Carr's efforts to taper Plaintiff's use of morphine, which,

according to Dr. Carr, must be managed carefully to avoid withdrawal side-effects.  Tr. 1029-31, 1774-79.  As noted, the record reflects Dr. Carr has a significant history treating Plaintiff and cooperated with Dr. Smith in managing Plaintiff's care and medication.

Finally, Dr. Carr's diagnoses are actually supported by Dr. Ellison, and Dr. Ellison's report does not present any basis for concluding Plaintiff is capable of performing work-related functions on a regular and continuing basis.

On this record, therefore, the Court concludes the ALJ erred when she failed to provide specific, legitimate reasons supported by the record for discrediting the opinion of Dr. Carr, Plaintiff's longtime treating physician.

**C.   Dr. Sacks's Opinion.**

On April 15, 2004, Dr. Sacks performed a psychological evaluation of Plaintiff, which included a diagnostic interview, mental status examination, and a review of Plaintiff's medical records.  Tr. 885-87.  In particular, Dr. Sacks noted Plaintiff's reports "bore a high degree of correspondence" to the information in Dr. Smith's treatment notes.  Tr. 885.  Dr. Sacks noted Plaintiff reported he suffered a panic attack in the waiting room and appeared with flushed face, agitated speech, and highly anxious.  Tr. 885.  Dr. Sacks also noted Plaintiff's complaints of daily panic attacks, avoidance of crowds, and hypervigilance

outside of his home.  Tr. 886.

On the basis of his evaluation, Dr. Sacks diagnosed Plaintiff with severe, chronic post-traumatic stress disorder with panic disorder.  Tr. 887.  Dr. Sacks assigned Plaintiff a Global Assessment of Functioning (GAF) of 45.[2]  Tr. 887.  As noted, Dr. Sacks concluded Plaintiff suffers "severe occupational and social interference due to symptoms of post traumatic stress syndrome, with associated panic disorder."  Tr. 887.

### 1.    ALJ's Decision.

The ALJ discredited Dr. Sacks's opinion on four grounds:  (1) Dr. Sacks does not have any expertise in assessing vocational issues, (2) Dr. Sacks did not include any functional limitations, (3) Dr. Sacks relied "largely" on Plaintiff's subjective complaints, and (4) Dr. Sacks's opinion is not consistent with Plaintiff's activities of daily living. Tr. 1142.  The ALJ, therefore, gave Dr. Sacks's opinion "little weight."  Tr. 1142.

### 2.    Analysis.

Dr. Sacks's report makes clear that he agrees with the

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of social, occupational, and psychological functioning on a scale of 1 to 100.  A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

assessment of Dr. Smith and that his report corroborates
Dr. Smith's findings.  Tr. 885-87.  The ALJ did not identify any
treating or examining medical source in the record that
contradicts Dr. Sacks's opinion.  In fact, the opinion of Dorothy
Anderson, Ph.D., a nonexamining Disability Determination Services
(DDS)[3] psychologist, is the only medical evidence in the record
identified by the ALJ that possibly contradicts Dr. Sacks's
opinion.  Tr. 514-27.  A nonexamining physician's opinion,
however, alone is not a sufficient basis to discredit an
examining physician's opinion.  *Lester*, 81 F.3d at 831 ("The
opinion of a nonexamining physician cannot by itself constitute
substantial evidence that justifies the rejection of the opinion
of either an examining physician or a treating physician.").

Although the ALJ stated Dr. Sacks does not have expertise in
assessing "vocational issues," Plaintiff asserts Dr. Sacks has
acted as an ME in Social Security proceedings and is a VA
examiner who routinely assesses the ability of patients to
perform work.  Plaintiff points to a number of cases in this
District in which Dr. Sacks was the ME of record for the
Commissioner.  In any event, Dr. Sacks's ultimate opinion that
Plaintiff's PTSD and panic disorder cause severe occupational and

---

[3] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a).

29 -  OPINION AND ORDER

social interference is corroborated by Plaintiff's treating
physicians, and the ALJ does not identify any medical evidence
that clearly contradicts Dr. Sacks's findings.

Although Dr. Sacks did not specifically include any
functional limitations, he explicitly deferred to "Dr. Smith's
notes for important information regarding [Plaintiff's]
functional capacity." Tr. 886. As noted, Dr. Smith made
detailed findings with respect to Plaintiff's functional
capacity. Tr. 849-56.

The ALJ also discredited Dr. Sacks's opinion on the
ground that he relied "largely" on Plaintiff's subjective
complaints, and the ALJ commented that Dr. Sacks's opinion
reflects he did not "know much about Plaintiff's daily
activities." Tr. 1142. Dr. Sacks, however, stated he based his
opinion on a mental status examination as well as a review of
Plaintiff's "claim file and electronic files." Tr. 885. Thus,
it does not appear from the record that Dr. Sacks relied only
on Plaintiff's subjective complaints. Moreover, as noted,
Dr. Sacks found Plaintiff's answers in the diagnostic interview
corresponded to the medical records that Dr. Sacks reviewed.
Tr. 887. In addition, nothing in Dr. Sacks's treatment notes
suggests he did not assess Plaintiff's functional capacity in
light of his daily activities. In fact, Dr. Sacks noted
Plaintiff reported his ability to spend much of his day

performing housework.  Tr. 886.

On this record, therefore, the Court concludes the ALJ erred when she failed to provide legally sufficient reasons supported by substantial evidence in the record for discrediting the opinion of Dr. Sacks.

**D.    Dr. Bates-Smith's Opinion.**

On May 23, 2008, Dr. Bates-Smith performed a neuro-psychological evaluation of Plaintiff, which included a clinical interview, mental status examination, behavioral observations, a review of Plaintiff's medical records, and a battery of nine tests over more than six hours.  Tr. 2520-43.  In particular, Dr. Bates-Smith provided an eleven-page appendix summarizing all of Plaintiff's relevant medical records.  Tr. 2530-40. Dr. Bates-Smith noted Plaintiff appeared restless and panicky during his interview.  Tr. 2527.  Dr. Bates-Smith also reported Plaintiff suffers panic attacks every other day, sleeps excessively, and seemed to fall asleep during the interview. Tr. 2527-28.

On the basis of her evaluation, Dr. Bates-Smith diagnosed Plaintiff with post-traumatic stress disorder with panic attacks, major depressive disorder, cognitive disorder NOS, and a pain disorder with both psychological and physical factors.  Tr. 2527. Dr. Bates-Smith found Plaintiff had "significant working memory problems which would limit him to simple tasks."  Tr. 2541.  She

31 -  OPINION AND ORDER

also concluded Plaintiff is moderately limited in his ability to interact with supervisors and co-workers and is markedly limited in his ability to interact appropriately with the public. Tr. 2542. Dr. Bates-Smith specifically noted she shared the opinion of Dr. Smith that Plaintiff would have "difficulty completing a normal work day / work week due to PTSD [symptoms] (esp[ecially] poor sleep and panic attacks) and pain." Tr. 2542.

### 1. ALJ's Decision.

The ALJ gave significant weight to Dr. Bates-Smith's opinion with respect to her conclusions about Plaintiff's limitations on performing complex tasks and interacting with the public. Tr. 1142. In all other respects, however, the ALJ discredited Dr. Bates-Smith's opinion and gave it "little weight." Tr. 1142-43. Again, the ALJ found Plaintiff's daily activities, such as his ability to travel to San Francisco and playing music in public, undermines Dr. Bates-Smith's opinion. Tr. 1142-43. The ALJ also cited Plaintiff's regular use of marijuana contradicts his statement to Dr. Bates-Smith about his usage. Tr. 1143. Finally, the ALJ found the fact that Dr. Bates-Smith performed her examination after Plaintiff's date last insured "makes it less useful than the treatment records in assessing Plaintiff's level of functioning." Tr. 1143.

### 2. Analysis.

Dr. Bates-Smith took care to list Plaintiff's daily

32 - OPINION AND ORDER

activities in her treatment notes, including his ability to help
his son get to school, read the newspaper, shower and clean
himself daily, to do laundry, to cook dinner, occasionally to go
fishing, to make short trips to the store, and sometimes to go
into larger public settings in the company of his wife and son.
Tr. 2528.  Thus, the record reflects Dr. Bates-Smith took
Plaintiff's daily activities into account when she assessed his
ability to perform work-related functions.

        The ALJ also notes Plaintiff told Dr. Bates-Smith that
he used marijuana in high school and "has tried it more
recently."  Tr. 2522.  Plaintiff told Dr. Bates-Smith he has a
medical marijuana card, which is verified by the record, and that
he was using marijuana more recently.  Tr. 250, 2522.  The ALJ,
found Plaintiff's statement contradicts the fact of Plaintiff's
longstanding use of marijuana.  Tr. 1143.  The Court, however, is
not persuaded an inconsistency exists between the record and
Plaintiff's statement to Dr. Bates-Smith.

        Finally, the ALJ notes Dr. Bates-Smith's report was
completed after Plaintiff's date last insured.  Tr. 1143.  The
Appeals Council in its July 2007 remand, however, ordered the ALJ
to obtain a consultative mental status examination.  Tr. 1155-56.
It is not Plaintiff's fault that this matter has been remanded
twice in a period of over seven years and that the ALJ had to be
ordered to obtain such an examination.  Ultimately Dr. Bates-

33 - OPINION AND ORDER

Smith's conclusions comport with Plaintiff's other treating and examining psychologists, and she provides a clear assessment of Plaintiff's inability to perform work-related functions.  The Court also notes Dr. Bates-Smith, like Dr. Sacks, agreed with Dr. Smith's conclusions.  Tr. 2542.  Moreover, the ALJ did not identify any treating or examining medical sources whose opinions contradict those of Dr. Bates-Smith.

The Court concludes on this record that the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for discrediting the opinion of Dr. Bates-Smith.

Although Plaintiff alleges the ALJ erred in other ways, the Court need not address those arguments in light of its conclusion that the ALJ erred when she discredited Plaintiff's treating physician and treating and examining psychologists.

## REMAND

Having found the ALJ erred when she improperly discredited the opinions of Drs. Smith, Carr, Sacks and Bates-Smith, the Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may

34 -  OPINION AND ORDER

"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000).  The court should grant an immediate award
of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id*.  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.

Because the ALJ did not provide legally sufficient reasons
supported by substantial evidence in the record for discrediting
the opinions of Drs. Smith, Carr, Sacks and Bates-Smith, the
Court credits those opinions as true.  *See Benecke v. Barnhart*
379 F.3d 587, 594 (9th Cir. 2004)(when "the ALJ fail[s] to
provide legally sufficient reasons for rejecting . . . [a]
physician['s] opinion[]," the court credits that opinion as
true).  *See also Lester*, 81 F.3d at 834 (improperly-rejected
physician opinion is credited as a matter of law).

35 -  OPINION AND ORDER

When credited, the medical opinions establish Plaintiff suffers from PTSD, which causes Plaintiff to endure regular panic attacks as often as every day and as little as one to two times per week, and such attacks would routinely disrupt his work day. Tr. 797, 845-56, 885-87, 1029-31, 2520-43.  Moreover, Plaintiff is seriously limited in his ability to interact appropriately with others outside of his home, which would contribute to regular workplace disturbances.  Tr. 849-56, 885-87, 2541-42. Plaintiff also suffers nightmares, other sleep disturbances as a result of physical and psychological impairments, and side effects from pain medication that renders him extremely fatigued. Tr. 991, 1700.  As a result, Plaintiff sleeps for 24-hour periods every two weeks and for 48-hour periods every four to six weeks. Tr. 1029, 1645, 1777.  These symptoms would all contribute to Plaintiff missing more than four work days per month.  Tr. 856, 887, 1031, 2542.  The record, therefore, reflects Plaintiff's impairments render him unable to work on a regular and continuing basis for "8 hours a day, for 5 days a week, or an equivalent schedule."  *See* SSR 96-8p, at *1.

At the hearing before the ALJ, the VE testified a person who missed all or even part of two days of work per month due to pain or fatigue would not be able to sustain employment.  Tr. 2727.

The Court concludes on this record that Plaintiff cannot sustain work-related physical activities on a regular and

36 - OPINION AND ORDER

continuing basis and, therefore, is disabled and entitled to benefits.  Thus, the Court finds additional proceedings would be futile.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 3rd day of February, 2010.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


37 - OPINION AND ORDER